COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                               NOS.
 2-08-390-CR

        2-08-391-CR

 

 

BRANDON RAY SMITH A/K/A                                                            APPELLANT

BRANDON SMITH

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I. 
Introduction

Appellant
Brandon Ray Smith a/k/a Brandon Smith appeals his convictions for two counts of
aggravated assault with a deadly weapon. 
He contends in three issues that the evidence is legally and factually
insufficient to support his convictions, that the trial court erred by
admitting evidence of an extraneous offense, and that the trial court erred by
denying his request for a limiting instruction concerning evidence of a
different extraneous offense.  We affirm.








II. 
Procedural Background

A grand
jury indicted Appellant for two counts of aggravated assault with a deadly
weapon.  The indictments collectively
alleged that Appellant intentionally or knowingly threatened imminent bodily
injury to Gary and Randolph (Randy) Osburg and that Appellant used or exhibited
a truck as a deadly weapon during the commission of the assaults.  The indictments also alleged that Appellant
had a previous felony conviction. 
Appellant pleaded not guilty to both counts, was tried in October 2008,
and the jury found Appellant guilty of both counts.  During the punishment phase of his trial,
Appellant pleaded true to the repeat offender notice in the indictments.  The jury found the enhancement to be true and
assessed Appellant=s punishment at thirteen years=
confinement for each count; the trial court ordered Appellant=s
sentences to run concurrently.  These
appeals followed.

III. 
Factual Background

Randy
Osburg testified at trial that he took his son, Gary Osburg, to a convenience
store in Tarrant County, Texas, on February 11, 2008, to buy some
cigarettes.  As they were leaving the
store, Randy and Gary saw Appellant and his female companion, Banu Kurt, involved
in what they believed was an altercation; they saw Appellant hit Ms. Kurt twice
in the chest with a closed fist.  After
the second hit, Ms. Kurt moved backward, hit the gas pump, and fell down.  Sitting in Appellant=s truck
were two children Randy believed were between three and six years old; one of
them was crying. 








Gary
further testified that, upon seeing the second hit, he got out of Randy=s truck
to help Ms. Kurt and to confront Appellant. 
As Gary approached Appellant, Appellant pulled brass knuckles from his
pocket and told Gary to mind his own business. 
Gary and Randy started Amov[ing]
around@
Appellant, and although they did not Ajump on@ him,
Appellant ran around the building and away from them.  

Randy
yelled for someone to call the police, and Appellant jumped into his truck and Aacted
like he was going to leave.@  Randy started talking to Ms. Kurt, but
something in Ms. Kurt=s expression made Randy turn around.  Randy then saw Appellant driving straight at
him.  When Randy heard Appellant
accelerate, Randy jumped into the bed of Gary=s truck;
Randy testified that he was afraid of dying or being badly hurt.  Appellant then circled the gas pump and drove
straight at Gary; Gary testified that he believed Appellant was trying to kill
him, and Randy testified that he was afraid Appellant was going to kill
Gary.  When Gary saw Appellant driving at
him, he grabbed a hammer from Randy=s truck
and threw it at Appellant, hitting the truck=s
windshield. Appellant slammed on the brakes, got out of his truck Ain a
complete rage,@ and ran after Gary while his
truck was still moving.  Appellant=s
unoccupied truck rolled across the street and came to rest against a sign and a
telephone pole. 








Appellant
then chased Gary around the convenience store on foot.  Gary came out from the back of the
convenience store and got into Randy=s truck,
and Gary and Randy drove away from the store. 
Appellant ran across the street to his truck and followed Gary and
Randy.  Randy testified that he drove
away from the convenience store and turned right on a street two or three
blocks away.  As he and Gary approached a
stop sign after turning right, Gary said, AHe=s behind
us.  He=s going
to ram us.@ 
Randy looked in his mirror and saw Appellant=s truck Acoming at
[them] fast.@ 


Randy
said that he accelerated and Agot maybe
a little bit across the street when [Appellant] hit us.@  Randy testified that he accelerated again and
believed he was driving sixty or seventy miles-per-hour when Appellant Arammed
[him] two or three more times.@  Randy testified that Gary had retrieved his
hammer from the convenience store parking lot and was leaning out the truck
window as they drove to throw the hammer at Appellant Ato slow
him down.@ 
Randy also testified that he was afraid Appellant would push them into
traffic at an upcoming intersection. 
Randy said that he then slammed his brakes and that Appellant also slammed
his brakes, avoiding a collision.  When
traffic on the cross-street was clear, Randy accelerated again but Appellant
approached them in the outside lane. 
Gary said, AHe=s going
to ram you,@ and Randy again slammed his
brakes.  Randy testified that Appellant Aended up
going across our lane, trying to ram us from the side, but luckily, he just
barely missed me.@ 
Randy said that Appellant=s truck
crossed some railroad tracks, Awent into
the air,@ and
stopped in a ditch. 








Gary
testified that he was scared and his adrenaline was going when they drove away
from the convenience store.  Gary
testified that while Randy drove, Gary looked out the window and saw Appellant
get into his truck and follow them.  Gary
said less than fifteen seconds passed before Appellant Awas
already up on us,@ tailgating them.  Gary testified that Appellant Aended up
striking@ the rear
of Randy=s truck
three times, jarring Randy and Gary.  As
Randy approached a T-intersection, Randy turned right and Appellant followed.
Gary testified that he Asaw [Appellant] coming up on us
really fast and I told my dad to get over into the next lane and stop and hit
his brakes.  And when he did, [Appellant]
was coming at us, barely missed us, and went into a ditch.@  

Randy
testified that after Appellant drove into the ditch, he and Gary drove back to
the convenience store, hoping the police had arrived by that time. The police
were there and noted damage to the bumper on Randy=s truck,
but no photographs were taken.  Randy
said he was somewhat able to repair the dent in the bumper by tying it to a
tree and pulling it out.  The police also
noted front-end damage to Appellant=s truck,
but the officer did not recall noticing any damage to the windshield. 

During
cross-examination, Randy acknowledged that he had joked with someone after the
altercation that he would gladly have the case dropped and all charges
dismissed if Appellant would meet Gary for a one-on-one fight.  Randy also admitted that he Aforgot@ to tell
the jury that he also had a weapon during the altercationCa tile
cutter he had gotten from the bed of his truck. 








Tricia
Nyamongo Walton, the clerk from the convenience store, testified that she saw
Appellant, a woman, and two other men standing behind a white truck.  She saw Appellant drive the white truck
around the store, and she told police that Appellant was Adriving
crazy,@ almost
ran into the building, the gas pumps, and her car.  She also told police that Appellant chased
the other men with his truck.  

Ms. Kurt
testified for the defense that she and Appellant were not fighting but were
instead Ajust
playing around.@ 
She said that Appellant pushed her but that she tripped over the gas
pump.  Ms. Kurt did, however, tell the
police that Appellant hit her in the face. 
She testified that as Randy and Gary approached Appellant, she gathered
her children, ages ten and eight, and went into the convenience store.  She said that she did not see what was thrown
at Appellant=s truck but that she did see
damage to the windshield.  She also
testified that she did not see Appellant drive toward anyone. 

IV. 
Sufficiency of the Evidence

In his
first point, Appellant contends that the evidence is legally and factually
insufficient to sustain his convictions for aggravated assault with a deadly
weapon. 

A.      Alleged Waiver by Multifarious Point on Appeal








The State
contends that we should summarily overrule Appellant=s first
point because it is multifarious.  A
multifarious issue is one that embraces more than one specific ground.  Stults v. State, 23 S.W.3d 198, 205
(Tex. App.CHouston [14th Dist.] 2000, pet.
ref=d).  By combining more than one contention in a
single issue, an appellant risks rejection on the ground that nothing is
presented for review.  Foster v. State,
101 S.W.3d 490, 499 (Tex. App.CHouston
[1st Dist.] 2002, no pet.).  But an
appellate court may address a multifarious issue that is sufficiently developed
in the brief.  Id.  Although Appellant=s first
point addresses both legal and factual sufficiency and challenges both venue
and the evidence to support each element of the indicted offenses, we are able
to discern Appellant=s contentions on appeal.  Thus, we will not summarily overrule
Appellant=s first point and will
substantively address it.  See Newby
v. State, 169 S.W.3d 413, 414 (Tex. App.CTexarkana
2005, pet. ref=d) (declining to overrule point
of error as multifarious Ain the interest of resolving
substantive issues@).

B.      Venue








Appellant
contends Athere is no evidence that the
striking of the victims[>] truck took place in Tarrant
County.@  However, an appellate court must presume that
venue was proved unless it was challenged in the trial court or the record
affirmatively shows the contrary.  Tex.
R. App. P. 44.2(c)(1).  Appellant does
not point us to a place in the record where he disputed venue at trial, and our
review of the record did not reflect any such objection.  Further, the evidence at trial showed that
the convenience store was located in Tarrant County, that Appellant chased
Randy and Gary away from the convenience store, and that Randy and Gary
returned to the convenience store to speak with police after the chase.  And our review of the record did not reveal
evidence that the chase occurred in a county other than Tarrant County.  Thus, because Appellant failed to dispute
venue before the trial court and the record does not affirmatively refute
proper venue, we must presume that venue was proved in the trial court.  See id.; Hernandez v. State,
198 S.W.3d 257, 268 (Tex. App.CSan
Antonio 2006, pet. ref=d) (op. on reh=g)
(presuming venue proved in trial court because appellant did not object at
trial and record did not affirmatively refute proper venue).  We overrule this portion of Appellant=s first
point.

C.      The Evidence is Legally Sufficient

1.  Standard of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).  The standard of
review is the same for direct and circumstantial evidence cases; circumstantial
evidence is as probative as direct evidence in establishing guilt.  Clayton, 235 S.W.3d at 778; Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

In
determining the legal sufficiency of the evidence to show an appellant=s intent,
and faced with a record that supports conflicting inferences, we Amust
presumeCeven if
it does not affirmatively appear in the recordCthat the
trier of fact resolved any such conflict in favor of the prosecution, and must
defer to that resolution.@ 
Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).








2.  Applicable Law

A person
commits the offense of aggravated assault if he Aintentionally
or knowingly threatens another with imminent bodily injury@ and Auses or
exhibits a deadly weapon during the commission of the assault.@  Tex. Penal Code Ann. ''
22.01(a)(2); 22.02(a)(2) (Vernon Supp. 2009). 
A deadly weapon is anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury.  Tex. Penal Code Ann. ' 1.07(a)(17)(B)
(Vernon Supp. 2009).  AIt is
reasonably clear that driving an automobile constitutes the use of it and that
driving [an automobile] in a manner capable of causing death or serious bodily
injury constitutes [the automobile] a deadly weapon.@  Tyra v. State, 897 S.W.2d 796, 798
(Tex. Crim. App. 1995).

3.  Analysis








As a
general rule, the State must, on proper request, elect the instance on which it
will rely for conviction when the State=s
evidence shows multiple instances of conduct conforming to a single indictment
allegation.  Martinez v. State,
225 S.W.3d 550, 555 (Tex. Crim. App. 2007). 
Here, following Appellant=s
request, the State elected to rely on Appellant=s conduct
after he followed Randy and Gary from the convenience store to prove his
commission of aggravated assault.  With
the State=s election in mind, Appellant
contends there is no evidence that he Aintentionally
threatened the victims with imminent bodily injury by chasing them in the truck
[or] that he intentionally struck their truck during the chase or that anyone
was placed in danger with the vehicle.@[1] We
disagree.

The
record contains legally sufficient evidence that Appellant intentionally or
knowingly threatened Randy and Gary with imminent bodily injury.  See Tex. Penal Code Ann. '
22.01(a)(2).  Randy testified that he was
afraid of being killed or badly hurt by Appellant before they left the
convenience store and that Appellant chased them in his truck after they
left.  Randy said that he drove away from
the convenience store and turned right on a street two or three blocks away,
that he saw Appellant=s truck Acoming at
[them] fast,@ that he made several attempts to
evade Appellant but that Appellant hit them with his truck two or three times,
and that he drove sixty or seventy miles-per-hour to escape Appellant but that
Appellant continued his attempts to ram their truck. The chase ended only after
Appellant tried to ram them from the side but barely missed and drove into a
ditch.  








Gary
testified that he believed Appellant was trying to kill him in the convenience
store parking lot.  He said that less
than fifteen seconds passed before Appellant caught them and struck them with
his truck three times, jarring them. 
Gary testified that Appellant followed them after Randy turned right and
was Acoming up
on [them] really fast.@ 
Gary said that after Randy hit the brakes, Appellant Abarely
missed@ them and
drove into a ditch.  This evidence is
legally sufficient to support the jury=s finding
that Appellant intentionally or knowingly threatened Randy and Gary with
imminent bodily injury.  See Tex.
Penal Code Ann. ' 22.01(a)(2); Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778; see also
Dominique v. State, No. 01-09-00385-CR, 2010 WL 1571180, at *3 (Tex. App.CHouston
[1st Dist.] Apr. 8, 2010, no pet. h.) (mem. op., not designated for
publication) (holding evidence legally and factually sufficient to sustain
conviction for aggravated assault on a public servant and stating that A[t]he
jury reasonably could have inferred that Dominique=s conduct
was intentional based on his repeated attempts to run down the police officers
who stood in his way@).

The
evidence is also legally sufficient to support the jury=s deadly
weapon findings.  The definition of a
deadly weapon under section 1.07(a)(17)(B) includes Aanything
that in the manner of its use or intended use is capable of causing
death or serious bodily injury.@  See Tex. Penal Code Ann. '
1.07(a)(17)(B) (emphasis added).  A car
can be a deadly weapon.  Butler v.
State, 928 S.W.2d 286, 288 (Tex. App.CFort
Worth 1996, pet. ref=d). 








Randy and
Gary collectively testified that Appellant rammed them with his vehicle two or
three times, and Randy testified that Appellant caught them even after he drove
sixty or seventy miles-per-hour while fleeing from Appellant.  Although neither Randy nor Gary testified
that they were physically injured by Appellant=s
conduct, there is no requirement that the deadly weapon actually cause death or
serious bodily injury before the jury can affirmatively answer the deadly
weapon question.  See Tex. Penal
Code Ann. ' 1.07(a)(17)(B); see also McCain
v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (holding section
1.07(a)(17)(B)=s Aplain
language does not require that the actor actually intend death or serious
bodily injury; an object is a deadly weapon if the actor intends a use of the
object in which it would be capable of causing death or serious bodily injury@).  The evidence is legally sufficient to support
the jury=s finding
that Appellant used or exhibited a deadly weapon, his vehicle, while assaulting
Randy and Gary.

Viewing
the evidence in a light most favorable to the prosecution, a rational jury
could have determined beyond a reasonable doubt that Appellant 

used or exhibited a deadly
weapon, his vehicle, while intentionally or knowingly threatening Randy and
Gary with imminent bodily injury.  See
Tex. Penal Code Ann. '' 22.01(a)(2), 22.02(a)(2); see
also Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235
S.W.3d at 778.  We hold the evidence was
legally sufficient to support the jury=s
verdicts, and we overrule the portion of Appellant=s first
point that challenges the legal sufficiency of the evidence.

C.     The
Evidence is Factually Sufficient

1.  Standard of Review








In
determining whether the evidence is factually insufficient to support a
conviction that is nevertheless supported by legally sufficient evidence, it is
not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006).  We cannot conclude
that a conviction is clearly wrong or manifestly unjust simply because we would
have decided differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon v. State, 253 S.W.3d 699, 704
(Tex. Crim. App. 2008).       

An
opinion addressing factual sufficiency must include a discussion of the most
important and relevant evidence that supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
Moreover, an opinion reversing and remanding on factual insufficiency
grounds must detail all the evidence and clearly state why the finding in
question is factually insufficient and under which ground.  Goodman v. State, 66 S.W.3d 283, 287
(Tex. Crim. App. 2001); see Steadman v. State, 280 S.W.3d 242,
247 & n.15 (Tex. Crim. App. 2009).

2.  Factually Sufficient Evidence








Reviewing
all the evidence in a neutral light, we recall that there were no photographs
or other physical evidence showing the extent of damage to Randy=s truck,
that there was no direct testimony that Appellant intentionally or knowingly
hit the rear of Randy=s truck, and that neither Randy
nor Gary testified that they were in fear of or in danger of imminent bodily
injury during the chase itself.  We also
recall that Randy and Gary confronted Appellant with weapons in the convenience
store parking lot.  However, Randy and a
police officer both testified that there was physical damage to both Randy=s and
Appellant=s trucks.  Further, Randy and Gary both testified that
Appellant repeatedly rammed or attempted to ram his truck into their truck
during the chase, and Randy testified he drove sixty to seventy miles-per-hour
to escape Appellant.  In addition, Randy
and Gary both expressly testified that they were in fear of death or serious bodily
injury in the convenience store parking lot and that Appellant=s
aggression toward them continued as he chased them away from the convenience
store.  Moreover, Appellant chased Randy
and Gary, as the aggressor, at high speed after Randy and Gary left the
convenience store in Randy=s truck. 








Viewing
the evidence in a neutral light, we conclude a rational trier of fact could
have found beyond a reasonable doubt that Appellant used or exhibited a deadly
weapon, his vehicle, while intentionally or knowingly threatening Randy and
Gary with imminent bodily injury.  See
Tex. Penal Code Ann. '' 1.07(a)(17)(B), 22.01(a)(2),
22.02(a)(2).  We cannot say that the
evidence is so weak that the jury=s
determination is clearly wrong or manifestly unjust or that the conflicting
evidence so greatly outweighs the evidence supporting the convictions that the
jury=s
determination is manifestly unjust.  See
Lancon, 253 S.W.3d at 704; Watson, 204 S.W.3d at 414B15,
417.  We therefore hold the evidence is
factually sufficient to support the jury=s
verdicts.  We overrule the remainder of
Appellant=s first point.

 

V.  Alleged
Extraneous Offense

In his
second point, Appellant contends that the trial court egregiously erred by
admitting evidence of his use or possession of brass knuckles, an extraneous
offense.  The State counters that
Appellant waived any error because the evidence was previously introduced
without objection and that the evidence was properly admitted as contextual
evidence. 

A.      Preservation of Error

The State
contends that Appellant waived any error concerning evidence of brass knuckles
because evidence of brass knuckles was introduced without objection during
Randy=s
testimony.  We disagree.  








To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R.
App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim.
App. 1998) (op. on reh=g), cert. denied, 526
U.S. 1070 (1999).  Further, the trial
court must have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s refusal
to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State,
138 S.W.3d 334, 341 (Tex. Crim. App. 2004). 
A request for a running objection is timely and preserves error as long
as it does not encompass too broad a subject matter during too broad a time or
over different witnesses.  Ford v.
State, 919 S.W.2d 107, 113B14 (Tex.
Crim. App. 1996);  Sattiewhite v.
State, 786 S.W.2d 271, 283 n.4 (Tex. Crim. App. 1989), cert. denied,
498 U.S. 881 (1990).








Here, the
parties held a lengthy discussion with the trial judge before opening
statements concerning Appellant=s motion
in limine to exclude any evidence that Appellant Aretrieved
some brass knuckles . . . [d]uring the course of the incident.@  Appellant objected at that time to any
reference to the brass knuckles under rules of evidence 401, 402, 403, and
404(b).  The trial court overruled the
motion in limine but asked Appellant=s counsel
to Arenew all
[his] prior trial objections@ before
brass knuckles were mentioned in evidence. 
The trial court then told Appellant=s counsel
that it would grant a running objection to any reference to the brass knuckles
if the trial court=s ruling remained the same.  Then, in accordance with the trial court=s
instructions, and before Randy testified, Appellant=s counsel
advised the trial court that Athis is
one of the witnesses identified in my earlier objection and motion as to the
allegation to the brass knuckles.  As to
this witness, I=d renew all those previous
objections on the grounds that I made.@  The trial court overruled the objection but
stated that Appellant had Aa running
objection as to all of those grounds previously stated.@  Although Appellant=s motion
in limine did not preserve error, Appellant again objected to the evidence
before Randy testified.  See Harnett
v. State, 38 S.W.3d 650, 655 (Tex. App.CAustin
2000, pet. ref=d) (AIt is
axiomatic that motions in limine do not preserve error.@).  Thus, we hold that Appellant properly
preserved his second point for our review.

B.      Analysis

The
admissibility of evidence is within the discretion of the trial court and will
not be overturned absent an abuse of discretion.  Moses v. State, 105 S.W.3d 622, 627
(Tex. Crim. App. 2003).  So long as the
trial court=s ruling lies within the zone of
reasonable disagreement, the appellate court should affirm.  Id. 









ASame
transaction contextual evidence@ is evidence
reflecting the context in which a criminal act occurred.  Wesbrook v. State, 29 S.W.3d 103, 115
(Tex. Crim. App. 2000).  It is a
recognition that events do not occur in a vacuum, and a jury has a right to
hear what occurred immediately before and after the offense in order to
realistically evaluate the evidence.  Id.  Extraneous offenses may be admissible as same
transaction contextual evidence when A>several
crimes are intermixed, or blended with one another, or connected so that they
form an indivisible criminal transaction.=A  Prible v. State, 175 S.W.3d 724, 731B32 (Tex.
Crim. App.), cert. denied, 546 U.S. 962 (2005) (quoting Rogers v.
State, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)).  This type of evidence results when an
extraneous matter is so intertwined with the State=s proof
of the charged offense that avoiding reference to it would make the State=s case
incomplete or difficult to understand.  Id.
at 732. 

The
evidence at trial indicated that Appellant pulled the brass knuckles from his
pocket as Gary initially approached him in the parking lot.  The evidence was relevant to Appellant=s intent
and was arguably part of an indivisible criminal transaction.  We conclude the evidence was admissible as
same transaction contextual evidence because the events are so interwoven that
avoiding reference to Appellant=s
retrieval of the brass knuckles would make the State=s case
incomplete or difficult to understand.  See
Amaya v. State, 759 S.W.2d 737, 739 (Tex. App.CEl Paso
1988, pet. ref=d) (holding attempted theft that
preceded the charged shooting offense was relevant to the motivation for the
ensuing violent confrontation between Appellant and the theft victim=s older
brothers because  the Afacts of
the two incidents [were] so interwoven as to necessitate admission of evidence
of both for a full contextual evaluation of the indicted offense by the jury@).  The trial court did not abuse its discretion
by admitting, under rule 404(b), the evidence concerning Appellant=s use or
possession of the brass knuckles.








Under
Texas Rule of Evidence 403, otherwise relevant evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair
prejudice.  Tex. R. Evid. 403.  A Rule 403 analysis by the trial court should
include, but is not limited to, the following considerations: (1) the probative
value of the evidence; (2) the potential of the evidence to impress the jury in
some irrational, indelible way; (3) the time the proponent needs to develop the
evidence; and (4) the proponent=s need
for the evidence.  Erazo v. State,
144 S.W.3d 487, 489 (Tex. Crim. App. 2004). 
Although a trial court must still perform a balancing test to see if the
same transaction contextual evidence=s
probative value is substantially outweighed by its prejudicial effect, the
prejudicial nature of contextual evidence rarely renders such evidence
inadmissible, as long as it sets the stage for the jury=s
comprehension of the whole criminal transaction.  Swarb v. State, 125 S.W.3d 672, 681
(Tex. App.CHouston [1st Dist.] 2003, pet.
dism=d).

We have
already concluded that the State had a need to introduce the evidence of the
brass knuckles as relevant to Appellant=s
intent.  Further, the State did not use
an inordinate amount of trial time to introduce the evidence.  Moreover, the record does not show that the
evidence of the brass knuckles had the potential to impress the jury in some
irrational, indelible way.  Finally, any
arguable prejudice suffered by Appellant by the introduction of the evidence
does not rise to the level of substantially outweighing the evidence=s
probative value in providing context for the charged offense.  We hold that the trial court did not abuse
its discretion by admitting the evidence concerning Appellant=s use or
possession of the brass knuckles.  We
overrule Appellant=s second point.[2]








VI. 
Limiting Instruction

In his
third point, Appellant contends that the trial court egregiously erred by
denying his requested rule 105 limiting instruction concerning the extraneous
offense of twice assaulting Ms. Kurt.  See
Tex. R. Evid. 105.  The State counters
that Appellant failed to preserve error because the request for a limiting
instruction was untimely.  We agree with
the State.

In Delgado
v. State, the court of criminal appeals stated,

if a defendant does not request a limiting instruction under Rule 105 at
the time that evidence is admitted, then the trial judge has no obligation
to limit the use of that evidence later in the jury charge.  This doctrine is a sensible one because
otherwise a jury might sit through most of a trial under the mistaken belief
that certain evidence is admissible for all purposes when, in fact, it is
not.  Once evidence has been admitted
without a limiting instruction, it is part of the general evidence and may be
used for all purposes.  But even when a
party properly requests a limiting instruction at the time the evidence is
first offered, the trial judge need not give an instruction on the burden of
proof at that time.  Taking the cases
together, then, a limiting instruction concerning the use of extraneous offense
evidence should be requested, and given, in the guilt‑stage jury charge
only if the defendant requested a limiting instruction at the time the
evidence was first admitted.

 

235 S.W.3d 244, 251 (Tex. Crim.
App. 2007) (emphasis added) (internal citations omitted).








Here, Appellant
did not request a limiting instruction concerning Appellant=s assault
of Ms. Kurt until the State had completed its direct examination of Randy.  And it was during the State=s direct
examination of Randy that he testified that Appellant hit Ms. Kurt twice in the
convenience store parking lot.  Thus,
Randy=s
testimony that Appellant twice hit Ms. Kurt had already been admitted as part of
the general evidence and was usable for all purposes.  See id.  Appellant failed to request a limiting
instruction at the time the evidence of the assault was first admitted, and
therefore failed to preserve this point for appellate review.  See id.; see also Prescott v. State,
123 S.W.3d 506, 515B16 (Tex. App.CSan
Antonio 2003, no pet.) (holding defendant who failed to request limiting
instruction concerning use of extraneous offenses Aat the
moment the evidence [was] admitted@ was not
entitled to limiting instructions in jury charge).  We overrule Appellant=s third
point.

 

 

VII. 
Conclusion

Having
overruled each of Appellant=s three
points, we affirm the trial court=s
judgments.

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  LIVINGSTON, C.J.; GARDNER
and WALKER, JJ.

 

PUBLISH

 

DELIVERED:  May 27, 2010     











[1]Appellant=s argument focuses on
whether he took intentional action, but we note that the statute provides that
it is an offense to Aintentionally or knowingly
threaten[] another with imminent bodily injury.@  Tex. Penal Code Ann. ' 22.01(a)(2). 





[2]Because we hold that the
evidence concerning the brass knuckles was admissible under rules 404(b) and
403 of the rules of evidence, we need not address whether the evidence was
admissible under rules 401 and 402.  See
Tex. R. App. P. 47.1 (requiring appellate court to address Aevery issue raised and
necessary to final disposition of the appeal@).